# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KAMRUZ ZAMAN, Ph.D., | * |
| Plaintiff | * |
| v. | * CIVIL NO. JKB-17-3584 |
| COMMUNITY COLLEGE OF BALTIMORE COUNTY, | * |
| Defendant. | * |

## MEMORANDUM

Plaintiff Kamruz Zaman, Ph.D, proceeding *pro se*, brought this action against his former employer, Community College of Baltimore County ("CCBC" or "Defendant") on December 1, 2017. (Compl., ECF No. 1.) Defendant moved to dismiss the complaint on January 26, 2018. (Mot. Dismiss, ECF No. 7.) Plaintiff has responded in opposition (ECF No. 11) and Defendant has replied (ECF No. 12). Therefore the motion is ripe for review. There is no need to hold a hearing to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). Plaintiff did not timely file charges with an administrative agency, and for that reason the Court will grant Defendant's motion and dismiss Plaintiff's complaint by accompanying order.

### I. *Background*

Plaintiff filed a form complaint (ECF No. 1), and attached a "Statement of Claim" (ECF No. 1-1), as well as a document entitled "Case: Kamruz Zaman against the Community College of Baltimore County," ("Case") (ECF No. 1-2). As this memorandum is evaluating a motion to dismiss, the Court will recite the facts of the case as stated in Plaintiff's complaint, *see Ibarra v.*

*United States*, 120 F.3d 472, 474 (4th Cir. 1997) by which it means the form complaint, Statement of the Claim, and Case.

Plaintiff is a "Bangladeshi Muslim with brown skin color." (ECF No. 1-2 at 1.) Plaintiff began working for CCBC as a Chemistry Professor in 2012. (*Id.* at 9-10.) On occasion, his colleagues made racially insensitive remarks. For example, one colleague suggested that "Asian people are not good drivers," and another stated that they "do not socialize" with faculty of Bangladeshi/Indian origin. (*Id.* at 10.) In addition to these statements, Plaintiff was also treated unfairly in regards to disciplinary proceedings, disputes with students, and the review of his teaching performance. He was not appointed to various positions in which he expressed interest. Plaintiff complained to CCBC, but was not satisfied with the ensuing investigation. On December 6, 2014, a Dr. O'Neal told Plaintiff that he "could not offer [Plaintiff] a three-year contract, [and] instead he was willing to offer [Plaintiff] a one-year contract." (*Id.* at 3.) Dr. O'Neal stated that this was in part due to Plaintiff's unprofessional interactions with a "presenter of a workshop." (*Id.*) He was later offered a three-year position the following August, in 2015. (*Id.* at 7.) But then, on December 11, 2015, Plaintiff was informed by letter and in person that CCBC was terminating his contract. (*Id.* at 1, 9.) The "effective date of termination," was December of the following year (December 31, 2016). (*Id.* at 1.) Plaintiff believes that his contract was terminated as a result of the discriminatory conduct of his colleagues.

On Plaintiff's form complaint in response to the prompt "It is my best recollection that the alleged discriminatory acts occurred on date(s) . . ." Plaintiff wrote "12/11/15 and before (8/15/2012 - 12/11/2015)." (ECF No. 1 at 5.) In his Statement of the Claim he wrote that "A group of faculty/staff of the Community College of Baltimore County (CCBC) . . . subjected me to national origin, racial, and religion based harassment in the form of, but not limited to,

2

derogatory comments regarding Asians and Muslims, work place bullying, fabricated performance issues, exclusion from work related activities, blatant unprofessionalism, and intentional efforts to undermine my professional credibility between August 15, 2012 and December 11, 2015." (ECF No. 1-1 at 1.) He further added that "The last action of the defendant in the form of terminating my job contract vide [sic] a letter dated December 11, 2015 has almost destroyed my professional career, ruined my family and me financially, mentally, and socially." (*Id.*) On the final page of the Case he again asserts that "The last action of the defendant in the form of terminating my job contract (vide [sic] a letter dated December 11, 2015) in the middle of the academic year violating the conditions set forth in the three-year faculty contract has almost destroyed my professional career, ruined my family and me financially, mentally, and socially." (ECF No. 1-2 at 12.) He does not allege in his form complaint, Statement of the Claim, or Case that he was discriminated against by Defendant in any way after December 11, 2015, and states clearly and emphatically multiple times in these documents that "The last action of the defendant" was on "December 11, 2015."[1]

Plaintiff filed an administrative charge of discrimination with the Maryland Commission on Civil Rights ("MCCR") on March 10, 2017. (*See* ECF No. 1-2 at 11-12.) On May 26, 2017 the MCCR informed Plaintiff that his claims were not timely. (*Id.* at 12.) The Equal Employment Opportunity Commission ("EEOC") ultimately adopted the MCCR's reasoning and issued Plaintiff a notice of right to sue on September 4, 2017. (*Id.*) Plaintiff then filed this action three months later. Defendant moved to dismiss the complaint on January 26, 2018, on the

---

[1] On page six of the Case, Plaintiff alleged that "[o]n April 17, 2017 the executive director of human resources asked Mr. Stephen Kabrhel, the physical science department head, to convene a meeting to discuss my annual performance statement (APS)." (ECF No. 1-2 at 6-7.) This is an obvious typographical error, and Plaintiff surely meant April 17, 2015, because the "Case" largely proceeds chronologically, and the prior events described were in March 2015 and Plaintiff does not allege in his complaint or argue in his opposition that he worked at CCBC on April 17, 2017, and yet he asserts in his Case that he was at this meeting.

3

grounds that Plaintiff did not timely present his claims to the state agency. That motion is now ripe and the Court will turn to its merits.

**II.** *Standard*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

The Court will construe all pleadings "so as to do justice," Fed. R. Civ. Pro. 8(e), and "as the case law makes very clear, the district court is obligated to make a determined effort to understand what the pleader is attempting to set forth." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1286 (3d ed.). Pleadings written by a *pro se* litigant are especially liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Still, the Court is not an advocate for a *pro se* litigant, and the Court cannot assume, or invent, facts outside the record in order to patch together a viable claim for a *pro se* plaintiff.

**III.** *Analysis*

Under Title VII, a Plaintiff must file a charge of discrimination with the appropriate state agency (in a jurisdiction with an appropriate state agency) within 300 days of the unlawful employment practice. 42 U.S.C. § 2000e-5(e). Defendant argues that Plaintiff's claims are untimely because the final alleged unlawful employment practice occurred on December 11,

2015, and Plaintiff did not file a charge of discrimination until March 10, 2017, 455 days later. Defendant is correct.

In opposition, Plaintiff argues that even though he was informed that his contract would be terminated on December 11, 2015, he was actually employed by CCBC through 2016, and therefore his claim is timely. As an initial matter, Plaintiff cannot amend his complaint by way of argument in opposition, or evidence attached to his opposition. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997). The Court will read a *pro se* plaintiff's complaint liberally, and will generally hold their advocacy to a lower standard. But that does not mean *pro se* plaintiffs operate under a different set of laws or procedural rules. The purpose of a motion to dismiss is to test the sufficiency of a complaint, not remind a plaintiff what additional arguments and evidence to include in it. In his complaint, Plaintiff states, clearly, multiple times, that December 11, 2015 was the final day of whatever discriminatory treatment he had suffered. Therefore, Plaintiff's charge of discrimination filed with the MCCR was roughly 155 days too late, and Plaintiff's complaint will be dismissed.[2]

Still, Plaintiff does suggest in his complaint that he worked at CCBC through 2016 (or at least that his contract was not terminated until the end of 2016). The Court will therefore briefly note two additional reasons why, even assuming that Plaintiff did work through 2016, and even considering Plaintiff's lengthy opposition and the numerous additional facts stated therein, Plaintiff's complaint is still untimely. First, Plaintiff appears to bring an unlawful termination claim,[3] and to the extent he has, December 11, 2015 is the operative date for his termination regardless of whether he continued to work through 2016. *See Delaware State College v. Ricks*,

---

[2] As Plaintiff appears to argue that the EEOC's notice of right to sue proves that his claim is timely, the Court will briefly note that such letters from the EEOC are intended to inform a claimant of a *right* to bring a lawsuit; they are not meant to suggest that the claim is meritorious.

[3] On his form complaint, under "The discriminatory conduct of which I complain in this action includes (*check all that apply*): . . ." Plaintiff only checked the box for "Termination of my employment." (ECF No. 1 at 5.)

449 U.S. 250 (1980). The analysis of Plaintiff's unlawful termination claim begins and ends with *Ricks*. In that case, a college professor plaintiff signed a "terminal" contract on September 4, 1974. 449 U.S. at 253-54. The defendant college had informed him that it was denying him tenure, but that in accordance with usual policy, he would have a "terminal" contract where he would teach for one additional year. *Id.* The plaintiff therefore did not actually leave the institution until the end of the school year in 1975. *Id.* at 257. The plaintiff believed that the decision to deny him tenure and fire him was based on discriminatory animus and he filed a complaint with the EEOC on April 28, 1975, 236 days after signing the contract. *Id.* at 254. Under Title VII, the plaintiff in *Ricks* had to file a complaint within 180 days of the alleged unlawful employment practice, and the district court therefore dismissed the complaint. *Id.* at 255-56. The Supreme Court affirmed that decision.

Even though the plaintiff had not actually left his position until much later, September 4, 1974 was the operative date of the unlawful employment practice because "termination of employment at [defendant college] [was] a delayed, but inevitable, consequence of the denial of tenure." *Id.* at 257-58. The "proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Id.* at 258 (emphasis in the original) ((quoting *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)). Plaintiff was informed of the termination decision on December 11, 2015, as Plaintiff states repeatedly in his complaint. As in *Ricks*, whether he continued to work for Defendant is irrelevant.

Finally, beyond the form complaint, the Court could construe the substance of Plaintiff's allegations as asserting a hostile work environment. Under such a construction, the date on which he was informed of his termination would not necessarily be the latest date of the unlawful employment practice. A hostile work environment is a single "unlawful employment practice"

6

that can be comprised of a number of different actions, and if any of those actions occurred within the filing period, then the entire hostile work environment claim is timely. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116-17 (2002). Thus, even though Plaintiff was informed of his impending termination on December 11, 2015, if he continued to work for CCBC for a year and experienced harassment and discrimination, that harassment and discrimination could possibly be part of a hostile work environment that could then be considered an unlawful employment practice that was timely asserted before the agency.

However, even if the Court construes Plaintiff's claim as a hostile work environment claim, and even if the Court goes beyond the complaint and considers the additional allegations in Plaintiff's opposition, Plaintiff simply does not allege or argue that anything discriminatory happened to him after December 11, 2015. He argues vehemently in his opposition that he continued to work for CCBC during 2016. But he does not allege that he was discriminated against during that year in any manner. Instead he argues that he "very clearly alleged that the hostile acts of the different faculty were almost non-stop after they started in September 2014 *and continued till early December 2015*." (Opp'n at 23 (emphasis added).) Regardless of how liberally the Court construes Plaintiff's complaint or what facts outside of it the Court considers, Plaintiff simply does not allege or argue that an unlawful employment practice under Title VII occurred after December 11, 2015, and as he did not complain of an unlawful employment practice to an agency until 455 days after that date, the Court will grant Defendant's motion and dismiss Plaintiff's complaint.

**IV.** *Conclusion*

Plaintiff did not timely file a charge of discrimination with an appropriate agency, as required by Title VII. *See* 42 U.S.C. § 2000e-5(e). Accordingly, the Court will grant Defendant's motion and dismiss Plaintiff's complaint by accompanying order.

DATED this 17th day of April, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge